**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
Alexandria Division

| | |
|---|---|
| ALAELDIN ABDELBAKI<br><br>    Plaintiff,<br><br>    v.<br><br>NORTHERN VIRGINIA COMMUNITY COLLEGE,<br><br>VIRGINIA COMMUNITY COLLEGE SYSTEMS,<br><br>GLENN DUBOIS,<br>    in his official capacity,<br><br>BARBARA CANFIELD,<br>    in her official capacity.<br><br>JULIE LEIDIG,<br>    in her official capacity<br><br>DEBORAH WYNE,<br>    in her official capacity, and<br><br>LAURA JACYNA,<br>    in her official capacity.<br><br>    Defendants. | Civil No. 1:21-cv-00073-TSE-TCB<br><br>(Jury Trial Requested) |

## AMENDED COMPLAINT

Plaintiff Alaeldin Abdelbaki ("Plaintiff" or "Dr. Abdelbaki"), by and through undersigned counsel, for his Amended Complaint against Defendant Northern Virginia Community College ("NOVA"), Virginia Community College System ("VCCS"), Glenn Dubois, Barbara Canfield, Julie Leidig, Deborah Wyne, and Laura Jacyna (collectively, "Defendants"), alleges as follows:

1

1. Plaintiff brings this action against the Defendant for damages arising out of violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), codified at 42 U.S.C. 2000e *et seq.,* for discrimination on the basis of race, national origin, and/or religion and retaliation in the terms of his employment, and race discrimination and retaliation for violations of the Fourteenth Amendment.

## JURISDICTION AND VENUE

2. This Court has original jurisdiction over all Counts pursuant to 28 U.S.C. §1331 because those claims arise under the United States Constitution and laws of the United States.

3. Jurisdiction to grant a declaratory judgment is conferred by 28 U.S.C. §§ 2201-02.

4. Prior to instituting this action, Plaintiff filed administrative claims with the Equal Employment Opportunity Commission ("EEOC") alleging discrimination for race, national origin, religion, and retaliation for alleging unlawful discrimination.

5. The EEOC issued Plaintiff a Right to Sue Letter on or about October 22, 2020. He filed his original Complaint on January 19, 2021.

6. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because all of the events, acts, and/or omissions giving rise to Plaintiff's claims occurred in the State of Virginia. Specifically, they occurred in Sterling, Virginia.

## PARTIES

7. Dr. Abdelbaki is a Arab/Middle Eastern man, who is a resident of Virginia. He is Muslim and of African descent (Egyptian). At all times relevant to the facts alleged in this lawsuit, he was employed by Defendant.

8. Defendant is a public community college and a subsidiary of the Northern Virginia Community College System, located at several campuses throughout Northern Virginia.

9. Defendant Glenn Dubois, as Chancellor of the VCCS, is head of the VCCS Leadership Team and works in his official capacity at VCCS headquarters.

10. Defendant Barbara Canfield serves as the Dean of the Mathematics, Science, Technology, and Business division at NVCC's Loudoun Campus, in her official capacity. She is a white female.

11. Defendant Julie Leidig serves as the provost at NVCC's Loudoun Campus, in her official capacity. She is a white, Jewish female.

12. Defendant Deborah Wyne serves as the dean of students at NVCC's Loudoun Campus, in her official capacity. She is a white female.

13. Defendant Laura Jacyna serves as an associate dean within the Mathematics, Science, Technology, and Business division at NVCC's Loudoun Campus, in her official capacity. She is a white female.

## STATEMENT OF FACTS

14. Dr. Abdelbaki is employed as a mathematics professor. Defendant Northern Virginia Community College as a mathematics instructor in or around August 2007. NOVA promoted him to a full professor in or around August 2016.

15. Since August 2007, Dr. Abdelbaki annually earned nearly perfect course evaluations scores from his students.

16. In or around March or April 2017, an online student complained about Dr. Abdelbaki, alleging that he had not yet graded the student's paper. Barbara Canfield, NOVA's Dean of Mathematics, called Dr. Abdelbaki about the complaint. Dr. Abdelbaki pointed out that the student went to a different school and had mailed his paper to Dr. Abdelbaki, who had not yet received it. Dr. Canfield, who is white, claims Dr. Abdelbaki yelled at her during this call, although

3

he did not learn about this accusation until November 2017 during his performance evaluation meeting.

17. On or about November 17, 2017, Dr. Canfield met with Dr. Abdelbaki to go over his employment evaluation and to discuss his five-year contract renewal. When Dr. Abdelbaki arrived at the meeting, Dr. Canfield asked if Laura Jacyna, her Associate Dean, could sit in on their meeting. Dr. Abdelbaki stated this was not okay, and repeatedly raised his objections to both Dr. Canfield and Ms. Jacyna, but Dr. Canfield insisted, and Ms. Jacyna ended up sitting in on the meeting anyways.

18. Ms. Jacyna was jotting notes during the entire meeting. Dr. Abdelbaki insisted that Ms. Jacyna was, in no way, a neutral third party, as Dr. Canfield serves as her direct supervisor. Dr. Abdelbaki learned that Dr. Canfield wanted a witness because of her perception that he yelled at her during the April 2017 phone call.

19. Dr. Canfield never asked witnesses to sit in on meetings with other professors, nor did she notify Dr. Abdelbaki prior to the meeting that Ms. Jacyna would be present and recording notes.

20. Prior to the meeting, Dr. Abdelbaki submitted his classroom observation form to Dr. Canfield by email, to which he indicated his rank as "full professor." During the meeting, Dr. Canfield handed Dr. Abdelbaki the observation form, and altered his rank from "full professor" to "associate professor." She later cited that it was a "mistake."

21. During the meeting, Dr. Canfield accused Dr. Abdelbaki of "not being collegial" for not turning in his school laptop to IT for an upgrade immediately when they requested it. In fact, Dr. Abdelbaki returned the laptop to IT within two to three weeks of their initial request, which included the Thanksgiving break. IT had also sent a second email notification to other

4

faculty who had not immediately turned in their laptops to IT. She also told Dr. Abdelbaki NOVA was not going to renew his contract. Feeling trapped and bullied, Dr. Abdelbaki remained quiet for most of the meeting.

22. Performance evaluations are based on form 105-183, weighted as: Teaching 50%-70%, Scholarly engagement 10%, Institutional Responsibility 10%, College service 10%.

23. On November 21, 2017, Dr. Abdelbaki met with Ms. Jacyna in her office to discuss the performance evaluation. Dr. Abdelbaki expressed concern over what happened at the November 17, 2017 meeting. Ms. Jacyna, who is white, responded, "I was invited by the dean," a reference to why she attended the meeting. Dr. Abdelbaki, who believed that NOVA's decision not to renew his contract was based on unlawful discrimination, said that if similar conduct occurs again, he would obtain legal counsel. Dr. Abdelbaki did not yell or threaten Ms. Jacyna and the entire interaction lasted about 20-30 seconds. However, Ms. Jacyna pushed a button on her phone and summoned the police.

24. A couple weeks later, Ms. Jacyna filed an EEO complaint against Dr. Abdelbaki alleging gender discrimination based on this November 21, 2017 meeting. On November 22, 2017, Dr. Canfield asked to meet with Dr. Abdelbaki about the incident. Dr. Abdelbaki explained to Dr. Canfield that he was the victim of racial and religious discrimination. Without Dr. Abdelbaki's knowledge, Dr. Canfield requested the police remain outside her office during this meeting.

25. Dr. Abdelbaki complained to Dr. Canfield that she had already "run out" an African-American full-time faculty member from the college in December 2016, and that it seemed like it was "his turn."

26. Following Ms. Jacyna's EEO complaint submission, Dr. Canfield altered her decision and renewed Dr. Abdelbaki's contract. Dr. Canfield submitted documentation to the EEO

alongside Ms. Jacyna's claims. Because there was no legitimate reason to terminate Dr. Abdelbaki's employment, NOVA and Dr. Canfield ultimately renewed his contract for another five years.

27. In or around December 2017, NOVA dismissed Ms. Jacyna's EEO complaint, finding no evidence of gender discrimination. The only witness, Lisa Stelle, contradicted Ms. Jacyna on several points.

28. In February 2018, Dr. Canfield directed Dr. Abdelbaki to take emotional intelligence training, citing the EEO report from Ms. Jacyna's complaint.

29. In or around February 2018, Dr. Abdelbaki requested to teach a high-level abstract algebra course. George Mason University "practically begged" NOVA to offer the course.

30. An email thread with several mathematics administrators approved to offer the course, with conditions. Dr. Canfield, however, put up resistance.

31. In both February 2018 and March 2018, Dr. Abdelbaki met with Dr. Leidig to complain of harassment and discrimination from Dr. Canfield. Dr. Leidig dismissed Dr. Abdelbaki's claims, and denied his request to report to another dean.

32. In both March 2018 and April 2018, Dr. Abdelbaki emails Dr. Leidig, requesting to report to another dean. Dr. Leidig denied the request.

33. In the email, Dr. Abdelbaki expresses concerns to Dr. Leidig that she has created a hostile and discriminatory-based working environment at the Loudoun Campus: "of the 6 administrators [at Loudoun].....each are of the same race, the same gender, and the same age bracket," i.e. all Caucasian females in their 50's and 60's. Dr. Leidig did not respond.

34. In or around March 2018, Dr. Abdelbaki filed a grievance objecting to the training, because it stemmed from racial or religious discrimination. While NOVA found Dr. Abdelbaki

failed to prove racial or religious animus, it did require someone from HR to be involved with future interactions between Dr. Abdelbaki and Dr. Canfield. Dr. Abdelbaki's request to report to another dean was denied.

35. Dr. Abdelbaki hired an attorney and filed a higher-level grievance, which was heard before an ad hoc committee in or around July 2018. NOVA also dismissed this grievance. However, the notice of dismissal contains factual inconsistencies, for example, the report stating that Dr. Abdelbaki admitted to yelling at Dr. Canfield, which is untrue. During both grievances, Dr. Abdelbaki insisted that he never yelled at Dr. Canfield.

36. On August 9, 2018, Dr. Abdelbaki's request to report to another dean was again denied.

37. In the grievance, Dr. Canfield conceded that she did not request a third party from HR to attend the performance evaluation meeting back on November 17, 2017.

38. In August and December 2018, Dr. Abdelbaki joined eleven other African-American, Middle-Eastern, and Muslim NOVA employees in a meeting with Scott Ralls, then president. They collectively voiced concerns to Scott, alleging racial and religious discrimination at the college. Scott paid lip service to these complaints but never really did anything about them. He left as president the next year.

39. Dr. Abdelbaki alleged to Scott Ralls that he was being discriminated against by both Dr. Canfield and Dr. Leidig. An African-American employee also complained of discrimination from Dr. Leidig. Ralls admitted that NOVA can be a "toxic" place to work at.

40. In the December 2018 meeting, Dr. Abdelbaki cited that Dr. Leidig had canceled a highly successful introductory course on Islam for two years, while retaining an introductory course on Christianity.

41. Between August 2018 and May 2019, both Dr. Canfield and Dr. Leidig acted noticeably more cordial to Dr. Abdelbaki, but reverted to their old ways after Scott left in May 2019. For instance, in a brief meeting held with Dr. Canfield, she was supportive of Dr. Abdelbaki offering his abstract algebra course, and offered to assist him if he liked.

42. On January 10, 2019, Dr. Leidig filed a NOVACares Report against Dr. Abdelbaki, citing his "vitriolic anger spikes" and "hostile" behavior while meeting with her.

43. Dr. Leidig acknowledged that Dr. Abdelbaki had presented claims of discrimination to her based on Dr. Canfield's actions.

44. Dr. Abdelbaki was never notified by NOVA officials that this report was filed against him, which was later retrieved by an internal investigator working cases for the VCCS.

45. A substantial part of this report described incidents that transpired in November 2017 surrounding Dr. Abdelbaki's performance evaluation meeting and meeting with Ms. Jacyna. Dr. Leidig inaccurately states, for example, that "Dr. Abdelbaki also confronted Laura Jacyna in her office and shouted at her loudly enough that it brought several concerned people out of their offices across the floor." As this incident occurred over a year prior to the compilation of the report, the investigator concluded that Dr. Leidig's report served as a retaliatory act. This report was in retaliation for Dr. Abdelbaki's complaints made to Scott Ralls during the previous month, in December 2018.

46. In the report, Dr. Leidig incorrectly states "He sometimes veered into very unprofessional words and behavior. I sent him away from my office after one discussion when he pointed at the sky and told me that God was watching all of the things I am doing and that there would be punishment after I die," and "It reflects an ever-widening circle of colleagues and supervisors (dean and now provost) to whom he feels he can display contempt with impunity"

Both statements are factually incorrect, to be proven in court. Dr. Abdelbaki believes this statement to be both retaliatory and religious profiling – being portrayed as a violent Muslim-American, and references made to God's punishment.

47. In May 2019, while administering a final exam, Dr. Abdelbaki stepped out of class to break his fast during Ramadan. Dr. Abdelbaki stayed right outside the class where he could see students through a window while he ate. He then went to the restroom to wash up and returned to the class.

48. In June 2019, Dr. Abdelbaki requested an online teaching schedule (to Dr. Canfield) for the spring 2020 semester, given the upcoming birth of a newborn child.

49. In light of Governor Northam's state mandated policy of 8-weeks paternity leave, both Dr. Canfield and Dr. Abdelbaki agreed that it would be inconvenient to take over another instructor's courses for the latter 8 weeks of the spring 2020 semester.

50. Thus, Dr. Abdelbaki requested to teach strictly online for the spring 2020 semester, a request that Dr. Canfield eventually denied. As the investigator cited, "she did not seek the counsel of Human Resources, nor did she allow Dr. Vetrano to handle the situation directly as it is his responsibility."

51. In or around June 2019, Dr. Abdelbaki e-mailed Dr. Canfield alleging widespread discrimination at NOVA. Dr. Abdelbaki copied several other high-ranking employees at NOVA, including then president, Melvyn Schiavelli, VCCS Chancellor Glenn Dubois, and Jill Biden. Melvyn responded by defending the school.

52. In August 2019, Dr. Canfield sent an email to Dr. Abdelbaki stating "If a student's actions are a cause for concern you should file a NOVACares report or, if you feel threatened, you should contact campus police." These actions had already been taken up by Dr. Abdelbaki.

53. In August 2019, Dr. Abdelbaki discussed the results of a student investigation with Debbie Wyne, Dean of Students. Ms. Wyne stated that those investigations were closed and that she could not divulge the results due to confidentiality and NOVA's policy. Dr. Abdelbaki asked her to cite the policy that prevented her from sharing the results with him. Ms. Wyne, who is white, then called the police, who escorted Dr. Abdelbaki to his car in front of staff and students.

54. In September 2019, Dr. Abdelbaki met with Dr. Canfield and two senior HR employees – HR director Tammy Currie, and Vice President Charlotte Calobrisi – who issued Dr. Abdelbaki a letter of reprimand and a development plan. They accused him of being "violent" because of all the police calls. They also reprimanded Dr. Abdelbaki for leaving the classroom to break his fast, although it was acceptable for faculty to take three -minute bathroom breaks during exams.

55. Dr. Abdelbaki was forced to attend six biweekly meetings between September 2019 and December 2019. During each meeting, Dr. Abdelbaki continued to plead his case of discrimination, and insisted that all police calls were made as a result of discrimination taken against him. Each time, he was denied.

56. During the meetings, Dr. Abdelbaki pleaded to report to another supervisor. His requests were denied.

57. In the letter, Dr. Canfield accused Dr. Abdelbaki of using the "B" word towards a white female employee working for NOVA Online, to which Dr. Abdelbaki adamantly denied. Upon investigation, no evidence was found to substantiate the claim, and Dr. Canfield retracted the allegations.

58. Dr. Abdelbaki satisfactorily completed the development plan on December 17, 2019.

59. On December 31, 2019, Dr. Abdelbaki successfully completed the Emotional Intelligence Training.

60. In or around February 2020, Dr. Abdelbaki contacted a senior HR director for the VCCS, Jennifer James, and again alleged that he was being discriminated against. An independent investigation was conducted and, in March 2020, the investigator issued a report finding that, beginning in January 2019, several actions taken against Dr. Abdelbaki were retaliatory.

61. The report also cites, "although out of scope of this report, several minorities were interviewed and stated that they felt discriminated against."

62. The report recommended that NOVA change Dr. Abdelbaki's supervisory reporting structure.

63. In June 2020, Anne Kress, the president, moved Dr. Abdelbaki underneath Abbas Eftekhari, another dean, who is Muslim and of Middle Eastern descent.

## COUNT ONE
## RACE, RELIGION, and NATIONAL ORIGIN DISCRIMINATION
## [Title VII, 42 U.S.C. § 2000e, *et seq.*]
*Against Defendants Northern Virginia Community College and Virginia Community College System*

64. Plaintiff re-alleges every allegation contained in this Complaint as if set forth fully herein.

65. At all relevant times, Plaintiff was a qualified employee at NOVA.

66. At all relevant times, Defendant was and continues to be an "employer" within the meaning of Title VII.

67. Defendant held Plaintiff to higher performance standards than NOVA employees who were white and non-Muslim.

68. Defendant subjected Plaintiff to discipline for alleged infractions for which employees at NOVA who were white and non-Muslim were not subjected.

69. Defendant discriminated against Plaintiff on the basis of his race, religion, and/or national origin by refusing to provide Plaintiff with the same employment rights as other NOVA employees who were white and non-Muslim.

70. By the acts and omissions alleged above, Defendant, in violation of Title VII, intentionally deprived Plaintiff of equal employment opportunities, and otherwise adversely affected his statuses as an employee.

71. As a direct, proximate, and foreseeable result of Defendant's unlawful conduct, Plaintiff has suffered a loss of employment benefits, and career path opportunities, in an amount to be proved at trial.

72. As a direct, proximate, and foreseeable result of Defendant's unlawful conduct, Plaintiff has suffered, and will continue to suffer, general physical, mental, and psychological damages in the form of extreme and enduring worry, suffering, pain, humiliation, embarrassment, mental anguish, and emotional distress, in amounts within the jurisdictional limits of this Court, to be proved at trial.

73. As a result of Defendant's conduct as alleged herein, Plaintiff is entitled to reasonable attorneys' fees and costs of suit as provided for by applicable law.

**COUNT TWO**
**HOSTILE WORK ENVIRONMENT**
**[Title VII, 42 U.S.C. § 2000e, *et seq.*]**
*Against Defendants Northern Virginia Community College and Virginia Community College System*

74. Dr. Abdelbaki re-alleges every allegation contained in this Complaint as if set forth fully herein.

Case 1:21-cv-00073-RDA-TCB   Document 8   Filed 04/20/21   Page 13 of 18 PageID# 66

75. Defendant's employees repeatedly subjected Plaintiff to unwelcome harassment regarding the terms and conditions of his employment.

76. Defendant, through its supervisory agents, took the following actions to harassment Plaintiff and/or create a hostile work environment: (1) unfairly scrutinized Plaintiff's work performance; (2) calling the police over mundane workplace encounters; (3) placing Plaintiff on a performance improvement plan; (4) threatening not to renew Plaintiff's contract; and (5) calling Plaintiff aggressive and violent for speaking up for himself.

77. Plaintiff's supervisors engaged in demeaning and hostile conduct towards Plaintiff during the course of his employment with Defendant.

78. Similarly-situated individuals who were white and non-Muslim were not treated the same by Defendant.

79. Similarly-situated individuals who had not engaged in protected activity were not treated the same by Defendant.

80. Defendant's harassing behavior towards Plaintiff was so severe and pervasive that it altered the terms and conditions of Plaintiff's employment and created a discriminatory and abusive working environment.

81. Plaintiff repeatedly complained to Defendant about the harassment and/or hostile work environment, but Plaintiff's complaints were largely ignored.

82. Defendant failed to take the appropriate corrective action as required by Title VII, including properly disciplining the charged official(s) and preventing further harassment of Plaintiff.

83. As a result of Defendant's unlawful actions, Plaintiff is entitled to monetary and non-monetary damages for severe emotional distress, mental anguish, and humiliation.

13

## COUNT THREE
## RETALIATION
### [Title VII, 42 U.S.C. § 2000e, *et seq.*]
*Against Defendants Northern Virginia Community College and Virginia Community College System*

84. Dr. Abdelbaki re-alleges every allegation contained in this Complaint as if set forth fully herein.

85. At all relevant times, Defendant was and continues to be an "employer" within the meaning of Title VII.

86. Throughout Dr. Abdelbaki's employment with Defendant, Dr. Abdelbaki was an "employee" within the meaning of Title VII.

87. Dr. Abdelbaki made reasonable complaints about race, national origin, and religious discrimination.

88. Defendant did not address Dr. Abdelbaki's complaints.

89. Dr. Abdelbaki was subjected to adverse employment actions and a hostile work environment. Several NOVA employees violated Dr. Abdelbaki's federal rights while acting within their official capacities working for an arm of the Commonwealth of Virginia. Furthermore, the pattern of these employees calling the police numerous times for mundane interactions exacerbates such violations.

90. By the acts and omissions alleged above, Defendant intentionally deprived Dr. Abdelbaki of equal employment opportunities, and otherwise adversely affected his status as an employee.

91. As a direct, proximate, and foreseeable result of Defendant's unlawful conduct, Dr. Abdelbaki has suffered, and will continue to suffer, a loss of wages and salary, bonuses,

compensation, employment benefits, career path opportunities, and expenses, in an amount to be proved at trial.

92. As a direct, proximate, and foreseeable result of Defendant's unlawful conduct, Dr. Abdelbaki has suffered, and will continue to suffer, generally physical, mental, and psychological damages in the form of extreme and enduring worry, suffering, pain, humiliation, embarrassment, mental anguish, and emotional distress, in amounts within the jurisdictional limits of this Court, to be proved at trial.

93. In acting as alleged above, Defendant acted with the wrongful intention of injuring Dr. Abdelbaki, from an improper motive amounting to malice, and in conscious disregard of Dr. Abdelbaki's rights.  Dr. Abdelbaki is entitled to recover punitive damages from Defendant in amounts to be proved at trial.

94. As a result of Defendant's conduct as alleged herein, Dr. Abdelbaki is entitled to reasonable attorneys' fees and costs of suit as provided for by applicable law.

## COUNT FOUR
**Fourteenth Amendment ~ Race Discrimination and Retaliation**
**42 U.S.C. §1983**
*Against Defendants Dubois, Canfield, Leidig, Wyne, and Jacyna*

95. Dr. Abdelbaki incorporates by reference each and every preceding paragraph, as though set forth fully herein.

96. During employment at NOVA, Dr. Abdelbaki had a right to be protected from racial discrimination in the terms of his employment.

97. The Fourteenth Amendment to the United States Constitution guarantees citizens equal protection of the laws of the United States, with violations thereof giving rise to claims for relief under 42 U.S.C. § 1983.

98. 42 U.S.C. § 1983 protects against the "deprivation of any rights, privileges, or immunities secured by the United States Constitution and laws" by persons acting under the color of law. The right to be free from racial discrimination in employment and retaliation for assertion of one's civil rights were both clear and well-established rights, known to the Defendant in this action throughout the time period of the allegations of this Complaint.

99. Defendants made employment-based decisions based on Dr. Abdelbaki's race, i.e., Arab/Middle Eastern.

100. Defendants gave preferential treatment to College employees who were white.

101. Defendants knowingly permitted Dr. Abdelbaki work in a racially hostile work environment.

102. Defendants intentionally deprived Dr. Abdelbaki of the same terms and conditions of employment available to college employees who were white.

103. Defendants intentionally denied Dr. Abdelbaki the opportunity to work in an environment that was free from unlawful discrimination.

104. Defendants' discriminatory conduct resulted in unjustified disciplinary action and performance counseling.

105. NOVA officials, including Julie Leidig, Barbara Canfield, HR representatives, and the VCCS, retaliated against Dr. Abdelbaki after repeated claims of race discrimination and harassment.

106. Chancellor Dubois acted under color of state law when he refused to stop Dr. Canfield, Ms. Wyne, and Ms. Jacyna's harassment of Dr. Abdelbaki.

107. Dr. Canfield acted under color of state law when she called the police on Dr. Abdelbaki, subjected him to unjustified disciplinary action, denied his request to work remotely and generally created a hostile work environment.

108. Ms. Wyne acted under color of state law when she called the police on Dr. Abdelbaki and generally created a hostile work environment.

109. Ms. Leidig acted under color of state law when she failed to stop Dr. Canfield, Ms. Wyne, and Ms. Jacyna's harassment of Dr. Abdelbaki and denied his request to work for a different supervisor.

110. Ms. Jacyna acted under color of state law when she called the police on Dr. Abdelbaki and generally created a hostile work environment.

111. As a direct, proximate, and foreseeable result of Defendant's unlawful acts and omissions, Dr. Abdelbaki suffered a loss of employment benefits in an amount to be proved at trial.

112. As a direct, proximate, and foreseeable result of Defendant's unlawful conduct, Dr. Abdelbaki have suffered, and will continue to suffer, physical, mental, and psychological damages including extreme anxiety, mental anguish, and emotional distress in an amount to be proved at trial.

113. As a result of Defendant's conducts as alleged herein, Dr. Abdelbaki is entitled to reasonable attorneys' fees and costs of suit as provided by applicable law.

114. Defendant's unlawful conduct was egregious, outrageous, and malicious and was in conscious disregard of Dr. Abdelbaki's rights, as a result Dr. Abdelbaki is entitled to punitive damages.

**JURY DEMAND**

115.  Dr. Abdelbaki demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Alaeldin Abdelbaki, prays for the following relief:

1. Entry of judgment in favor of Plaintiff and against Defendant for:

    a. Compensatory damages;

    b. Liquidated damages;

    c. Punitive damages;

    d. Reasonable attorneys' fees and court costs associated with this suit; and

    e. Prejudgment interest, costs and disbursement as appropriate herein;

2. Declare, pursuant to 28 U.S.C. § 2201, that through their acts and omissions, Defendant maintained a racially hostile work environment in violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution; and

3. Award such other and further relief in any form that this Court deems just and proper under the facts and circumstances as proved at trial.

Respectfully submitted,

/s/Robert Porter
Robert Porter, Esq. (VSB 78934)
The Spiggle Law Firm, PLLC
4830 31st St. S. Ste A
Arlington, Virginia 22206
Telephone: (202) 602-6831
Facsimile: (202) 540-8018
E-mail: rporter@spigglelaw.com
Attorney for Plaintiff, Alaeldin Abdelbaki