IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| ALAELDIN ABDELBAKI, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:21-cv-00073 (RDA/TCB) |
| | ) | |
| NORTHERN VIRGINIA COMMUNITY | ) | |
| COLLEGE, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Defendants' Northern Virginia Community College ("NVCC"), Virginia Community College Systems ("VCCS"), Barbara Canfield, in her official capacity, Glenn Dubois, in his official capacity, Laura Jacyna, in her official capacity, Julie Leidig, in her official capacity, and Deborah Wyne, in her official capacity ("Defendants") Motion to Dismiss ("Motion") Plaintiff Alaeldin Abdelbaki's ("Plaintiff") Amended Complaint (Dkt. 8). Dkt. 31. Considering the Motion together with Defendants' Memorandum in Support (Dkt. 32); Plaintiff's Opposition (Dkt. 36); and Defendants' Reply (Dkt. 38), the Court grants the Motion in part and denies the Motion in part for the reasons that follow.

### I.  BACKGROUND

#### A.  Factual Background

In his Amended Complaint, Plaintiff Dr. Alaeldin Abdelbaki alleges three counts solely against NVCC, his direct employer, and VCCS, the parent of NVCC, in violation of Title VII of the Civil Rights Act of 1964: (1) discrimination against Plaintiff on the basis of his race, religion, and national origin; (2) hostile work environment; and (3) retaliation.  Dkt. 8 ¶¶ 64-94.  Plaintiff also alleges one count of race discrimination and retaliation pursuant to 42 U.S.C. § 1983 in

violation of the Fourteenth Amendment of the United States Constitution against Defendants Dubois, Canfield, Leidig, Wyne, and Jacyna in their official capacities. *Id.* ¶¶ 95-115. This Court accepts all facts alleged within the Amended Complaint as true, as it must at the motion-to-dismiss stage. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Plaintiff was and continues to be employed as a mathematics professor at NVCC, after having been promoted to a full professorship in August of 2016. Plaintiff is of Egyptian descent and is a practicing Muslim. From the genesis of his employment at NVCC in August of 2007 until the spring of 2017, Plaintiff received "nearly perfect course evaluations scores" from his pupils. Dkt. 8 ¶ 16. But in March or April of 2017, one of Plaintiff's students enrolled in his online course alleged that he "had not yet graded the student's paper." That complaint precipitated the Dean of Mathematics, Dr. Barbara Canfield, to call Plaintiff about the matter. Plaintiff explained that the student allegedly attended a different school and had mailed his paper to Plaintiff, who had yet to receive it. During this phone call exchange, Dr. Canfield alleged that Plaintiff "yelled at her," which Plaintiff vehemently denies. *Id.* ¶¶ 16, 35.

Later that year, on November 17, 2017, Dr. Canfield met with Plaintiff to discuss his evaluation as a professor and the potential renewal of his five-year contract. Upon Plaintiff's arrival to the meeting and without prior notice, Dr. Canfield asked whether Plaintiff had any objection to Ms. Laura Jacyna joining the meeting as a third-party observer. Plaintiff "repeatedly" objected to her attendance, but Ms. Jacyna joined the meeting after Dr. Canfield insisted. *Id.* ¶ 17. Plaintiff alleges that Dr. Canfield "never asked witnesses to sit in on meetings with other professors." *Id.* ¶ 19. The tension persisted during the course of the meeting as Dr. Canfield allegedly informed Plaintiff that NVCC "was not going to renew his contract" and accused

Plaintiff of "not being collegial" for failing to timely provide the technology department his laptop for an update upon their request. *Id.* ¶ 21.

Several days after the meeting, Plaintiff visited Ms. Jacyna in her office to discuss his evaluation. In what Plaintiff describes as "about 20-30 seconds," he warned, in an allegedly non-threatening tone—which Ms. Jacyna described as "yelling," *id.* ¶ 45—that if any future discriminatory conduct against him occurred, he would obtain legal counsel. *Id.* ¶ 23. Minutes later, Ms. Jacyna allegedly called the police on Plaintiff. The next day, Dr. Canfield summoned Plaintiff to a meeting, during which Dr. Canfield allegedly requested that the police wait outside. At that meeting, Plaintiff divulged to Dr. Canfield his belief that she had already "run out" an African American full-time faculty in December of 2016 and that "it seemed like it was his turn" next. *Id.* ¶ 25.

Weeks later, Ms. Jacyna filed an EEOC complaint against Plaintiff alleging gender discrimination resulting from the November 21, 2017 incident. After Plaintiff submitted responsive documentation to the complaint, NVCC dismissed Ms. Jacyna's grievance allegedly finding no evidence of gender discrimination by Plaintiff. Ultimately Dr. Canfield also retracted her earlier representation to Plaintiff and renewed Plaintiff's employment contract for another five years. Yet the friction continued. In February of 2018, Dr. Canfield ordered that Plaintiff participate in an emotional intelligence training as a result of Ms. Jacyna's EEOC complaint. That same month, she also allegedly resisted approving Plaintiff's request to teach a high-level algebra course, despite having received qualified approval from other mathematics administrators.

In both February and March of 2018, Plaintiff also met with the Provost of NVCC's Loudoun Campus, Dr. Julie Leidig, to complain of alleged harassment and discrimination from Dr. Canfield. According to Plaintiff, he was met with similar dismissiveness and Dr. Leidig denied

Plaintiff's request to report to another dean.  Plaintiff persisted over email, flagging his concern that all six administrators at the campus where he taught were "Caucasian females in their 50s and 60s," only to be ignored by Dr. Leidig.  *Id.* ¶ 32-33.  Plaintiff then began to pursue more formal avenues.  First, he allegedly complained to NVCC for being required to attend the emotional awareness training because he believed "it stemmed from racial or religious discrimination."  *Id.* ¶ 34.  NVCC allegedly determined that Plaintiff had not demonstrated racial or religious animus but it did designate a representative from human resources to attend any future interactions between Plaintiff and Dr. Canfield.  Furthermore, Plaintiff's request to report to another dean was again denied.  Unsatisfied, Plaintiff allegedly hired an attorney and filed a "higher-level grievance," which an "ad hoc committee" at NVCC heard in July of 2018.  *Id.* ¶ 35.  Again, Plaintiff's complaint was dismissed after, according to Plaintiff, the NVCC committee's report mischaracterized his behavior towards Dr. Canfield as aggressive.  *Id.*

In August and December of 2018, Plaintiff allegedly joined eleven other African-American, Middle-Eastern, and Muslim NVCC employees in a meeting with then-president Scott Ralls.  The group alleged instances of "racial and religious discrimination at the college," including an instance in which Dr. Leidig cancelled a "highly successful introductory course on Islam for two years, while retaining an introductory course on Christianity."  *Id.* ¶ 40.  Mr. Ralls "admitted that [NVCC] can be a 'toxic' place to work," but "never really did anything" and he stepped down as president the next year.  *Id.* ¶¶ 38-39.

On January 10, 2019, Dr. Leidig filed a NOVACares Report against Plaintiff for Plaintiff's "vitriolic anger spikes" and "hostile" behavior in meeting with her, which Plaintiff alleges was a "retaliatory act" in response to Plaintiff's meeting with Mr. Ralls.  *Id.* ¶¶ 42, 45.  Plaintiff maintains that Dr. Leidig's NOVACares Report incorrectly states, with the stench of Islamophobia, that he

"sometimes veered into very unprofessional words and behavior" and that "after one discussion []

he pointed at the sky and told me that God was watching all of the things I am doing and that there

would be punishment after I die." *Id.* ¶ 46.

Parallel conflict with the NVCC administration continued to accumulate and escalate as a

result of a series of later events.  In May 2019, while administering a final exam, Plaintiff exited

the classroom to "break his fast during Ramadan." *Id.* ¶47.  In June of 2019, when Plaintiff emailed

Dr. Canfield to allege discrimination at NVCC, this time copying other "high-ranking employees;"

only Dr. Canfield responded, inviting Plaintiff to file a NOVACares Report.  *Id.* ¶ 51.  And in

August 2019, Plaintiff attempted to convince Dean of Students, Ms. Debbie Wyne, to divulge the

results of a student investigation—which provoked Ms. Wyne to phone the police, who then

escorted Plaintiff to his car "in front of staff and students." *Id.* ¶ 53.  These points of contention

culminated in a September 2019 meeting between Plaintiff, Dr. Canfield, and two senior HR

employees.  Dr. Canfield and the two senior HR employees accused Plaintiff of "being violent

because of all the police calls." *Id.* ¶ 54.  They also allegedly reprimanded Plaintiff for leaving his

classroom during testing to break his fast "although it was acceptable for faculty to take three

[]minute bathroom breaks during exams." *Id*.  Formalizing her concerns in a letter of reprimand,

Dr. Canfield allegedly accused Plaintiff of "using the 'B' word towards a while female employee

working for NVCC Online." *Id.* ¶ 57.  Subsequent investigation allegedly found no evidence to

substantiate this claim, and Dr. Canfield withdrew the allegations.  *Id.*

Still, Plaintiff was allegedly required to attend six biweekly meetings between September

2019 and December 2019 meant to temper his alleged unruly behavior.  At each meeting, Plaintiff

protested and "continued to plead his case of discrimination" but each time, according to Plaintiff,

he was rebuffed.  In February of 2020, Plaintiff contacted a senior HR director for the VCCS and

re-alleged the discrimination he believed he had endured.  According to Plaintiff, VCCS conducted

an independent investigation and in March of 2020 an investigator issued a report finding that,

"beginning in January 2019, several actions taken against [Plaintiff] were retaliatory" and

recommended that NVCC change Plaintiff's supervisory reporting structure.  *Id.* ¶¶ 60, 62.  In

June of 2020, NVCC's president replaced the dean to which Plaintiff reports with another dean

who is "Muslim and of Middle Eastern descent."  *Id.* ¶ 63.

## B.  Procedural Background

On October 14, 2020, Plaintiff filed a Charge of Discrimination ("Charge") with the Equal

Employment Opportunity Commission ("EEOC").  Dkt. 1-1.  Just over a week later, the EEOC

issued a Dismissal and Notice of Rights as to Plaintiff's Charge.  On January 19, 2021, Plaintiff

filed a complaint with this Court, appearing in a *pro se* capacity.  Dkt. 1.  On March 17, 2021,

Plaintiff then obtained legal representation and on April 20, 2021 filed his Amended Complaint,

which is the subject of the Motion before this Court.  Dkt. Nos. 1; 4.  On August 9, 2021,

Defendants timely filed the instant Motion to Dismiss seeking to dismiss Defendant NVCC on

jurisdictional grounds and to dismiss each count of the Amended Complaint for failure to state a

claim.  Dkt. 31.  Plaintiff filed his Opposition on August 23, 2021 and, that same day, separately

filed a Motion for Leave to File a Second Amended Complaint.  Dkt. Nos. 35; 36.  Defendants

filed their Reply on August 30, 2021.  Dkt. 38.  On September 10, 2021, following briefing

between the parties on Plaintiff's motion to amend the Amended Complaint, Magistrate Judge

Buchanan denied the request.[1]  Dkt. 42.

---

[1]     Because the magistrate judge denied Plaintiff's motion to amend his Amended
Complaint, this Court does not consider, at this stage, any of the arguments raised by Plaintiff
related to any changes he made in his proposed Second Amended Complaint.

## II.  STANDARD OF REVIEW

A Rule 12(b)(6) motion tests the sufficiency of a complaint.  *Brockington v. Boykins*, 637 F.3d 503, 506 (4th Cir. 2011).  "[T]he reviewing court must determine whether the complaint alleges sufficient facts 'to raise a right to relief above the speculative level[,]'" and dismissal of the motion is appropriate only if the well-pleaded facts in the complaint "state a claim that is plausible on its face.'"  *Goldfarb v. Mayor & City Council of Baltimore*, 791 F.3d 500, 508 (4th Cir. 2015) (quoting *Twombly*, 550 U.S. at 555, 570).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

At the motion-to-dismiss stage, a plaintiff need only "allege facts sufficient to state all the elements of her claim," *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003), and "the district court must 'accept as true all well-pled facts in the complaint and construe them in the light most favorable to [the plaintiff].'"  *Dao v. Faustin*, 402 F. Supp. 3d 308, 315 (E.D. Va. 2019) (quoting *United States v. Triple Canopy, Inc.*, 775 F.3d 628, 632 n.1 (4th Cir. 2015)).  In Title VII cases, the Supreme Court has cautioned that a plaintiff "is not required to plead facts that constitute a prima facie case."  *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002).  Still, "[c]onclusory allegations regarding the legal effect of the facts alleged" need not be accepted. *Labram v. Havel*, 43 F.3d 918, 921 (4th Cir. 1995); *see also E. Shore Mkts., Inc. v. J.D. Assoc. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000) ("[W]hile we must take the facts in the light most favorable to the plaintiff, we need not accept the legal conclusions drawn from the facts . . . . Similarly, we need not accept as true unwarranted inferences, unreasonable conclusions, or arguments.").  And "[g]enerally, courts may not look beyond the four corners of the complaint in

evaluating a Rule 12(b)(6) motion." *Linlor v. Polson*, 263 F. Supp. 3d 613, 618 (E.D. Va. 2017) (citing *Goldfarb*, 791 F.3d at 508).

## III.  ANALYSIS

### A.  Motion to Dismiss for Lack of Jurisdiction

Defendants first argue that NVCC is not a proper party to the suit because it is merely an arm of VCCS rather than a separate entity capable of being sued.  Unlike with VCCS, Defendants submit that no Virginia statute specifically creates or grants the right to sue or be sued as to NVCC.  In response, Plaintiff "does not contest the dismissal of NVCC as a defendant in this case."  Dkt. 36 at 4.

Given that Defendants' position comports with the jurisprudence in this circuit and Plaintiff has represented that he does not contest the dismissal of NVCC, this Court lacks jurisdiction over any claims asserted directly against NVCC.  *See, e.g.*, *Blevins v. Suarez*, No. 4:08-cv-00014, 2008 WL 4560627, at *7 n.9 (W.D. Va. Oct. 10, 2008) ("The legislature did not specifically designate the individual community colleges or grant them any powers, specifically the power to sue or be sued."), *aff'd*, 322 F. App'x 284 (4th Cir. 2009); *Goff v. J. Sargeant Reynolds Cmty. Coll.*, 68 Va. Cir. 382, 383 (2005) (finding that a Virginia community college was not an "independent legal entity" capable of being sued because it lacked the requisite statutory invitation).  The Court will order that the clerk remove NVCC as a defendant in this case.

### B.  Motion to Dismiss for Failure to State a Claim

#### 1.  *Race, Religion, and National Origin Discrimination Claim (Count I)*

Defendants contend that Plaintiff's discrimination claim pursuant to Title VII should be dismissed because Plaintiff has failed to state a cognizable claim of discrimination.  In response, Plaintiff also indicated that he "does not oppose the dismissal of his claim of discrete act

discrimination" under Count One and thus will not proceed with his "discrete act claims, including Count One of his Amended Complaint."  Dkt. 36 at 4-5.

Plaintiff therefore concedes Count I of his Amended Complaint, and this Court will therefore dismiss that count.

### 2.  *Remaining Title VII Claims*

#### i.  Plaintiff's Administrative Exhaustion

As to the remaining claims, as part of the Court's inquiry into whether Plaintiff's allegations properly state any claims on which relief may be granted, this Court addresses the threshold question of whether Plaintiff's remaining Title VII claims are within the scope of his Charge.[2]

Defendants attempt to defeat Plaintiff's Title VII claims by asserting that Plaintiff failed to exhaust his administrative remedies when he filed his Charge.  In essence, Defendants submit that Plaintiff failed to particularly claim race discrimination and failed to allege national origin or religious harassment in the underlying Charge.  From Defendants' vantage point, because of these missteps, Plaintiff is further confined to relying solely on discriminatory conduct arising from the cause of action in the underlying Charge that occurred on December 31, 2019 or, at the earliest, December 19, 2019—the statutorily prescribed start date of alleged acts for which Plaintiff's October 14, 2020 Charge would be deemed timely filed.

---

[2]  The Fourth Circuit previously held in *Jones v. Calvert Grp., Ltd.*, 551 F.3d 297, 300 (4th Cir. 2009) that "a failure by the plaintiff to exhaust administrative remedies concerning a Title VII claim deprives the federal courts of subject matter jurisdiction over the claim."  However, the Supreme Court abrogated that decision in *Fort Bend Cty. v. Davis*, 139 S. Ct. 1843, 1850-51 (2019), where the Court held that "Title VII's charge-filing requirement is not of jurisdictional cast."

As to any claims arising from racial discrimination, Plaintiff admits that he left the "Race" box unchecked in his Charge. But he then submits his right to rebut the presumption that such claim was spelled out in the underlying narrative of the Charge. As to any claims based on his national origin and religion, Plaintiff claims both the checked boxes and the underlying narrative of the Charge sufficiently support his claims under Title VII. The backbone of Plaintiff's argument is straightforward: the incidents that predate the 300 day period through which the claims in his Charge may relate back remain viable if they are considered continuing violations.

In order to file a suit before a district court under Title VII, a plaintiff must exhaust his administrative remedies by filing a charge of discrimination with the EEOC. 42 U.S.C. § 2000e-5(e)(1), (f)(1); *Bryant v. Bell Atl. Md., Inc.* 288 F.3d 124, 132 (4th Cir. 2002). If the charging party "initially instituted proceedings with a State or local agency with authority to grant or seek relief from such practice," such charge must be filed within 300 days "after the alleged unlawful practice occurred." 42 U.S.C. § 2000e-5(e)(1); 29 U.S.C. § 626(d). The EEOC charge "defines the scope of the plaintiff's right to institute a civil suit," *id.* (citing *Smith v. First Union Nat'l Bank*, 202 F.3d 234, 247 (4th Cir. 2000)), such that a plaintiff may pursue "[o]nly those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint," in a subsequent lawsuit, *Chacko v. Patuxent Inst.*, 429 F.3d 505, 506 (4th Cir. 2005) (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 963 (4th Cir. 1996)).

"[A] plaintiff fails to exhaust his administrative remedies where . . . his administrative charge[] reference[s] different time frames, actors, and discriminatory conduct than the central factual allegations in his formal suit." *Chacko,* 429 F.3d at 506. Thus, "the allegation of a discrete act or acts in an administrative charge is insufficient when the plaintiff subsequently alleges a

broader pattern of misconduct." *Id.* After applying these constraints, district courts bar "allegations that fall outside the scope of the EEOC charge." *Sullivan v. Perdue Farms, Inc.*, 133 F. Supp. 3d 828, 834 (E.D. Va. Sept. 23, 2015) (citing *Evans*, 80 F.3d at 962-63). Likewise, if the EEOC charge "alleges discrimination on one basis, such as race, and the formal litigation claim alleges discrimination on a separate basis, such as sex," that claim "will generally be barred." *Jones*, 551 F.3d 297, 300 (4th Cir. 2009), *abrogated on other grounds by Fort Bend Cty.*, 139 S. Ct. 1843.

In his Charge, Plaintiff checked the boxes for "Religion," "National Origin," and "Retaliation" while also selecting the box indicating that the alleged discrimination was a "Continuing Action." Dkt. 1-1 at 1. In the Particulars section of the Charge, Plaintiff expounded on the nature of these putative forms of discrimination. Plaintiff outlined three occasions between November 2017 and August 2019 in which different Caucasian female administrators called the police on Plaintiff because he was "illegitimately" perceived as "a threat and violent." *Id.* "As a result of these three calls," Plaintiff describes that he "was issued a letter of reprimand, in December 2019." *Id.* During that same month, Plaintiff recounts that Defendant Dr. Barbara Canfield, his supervisor, "denied [him] of breaking [his] fast on the first day of Ramadan, citing that [he] violated [NVCC] policy for doing so." *Id.* Later that month, Plaintiff described having received a "letter of [r]eprimand" from Defendant Canfield requiring that he "attend 6 meetings with her and the HR director." However, according to Plaintiff's charge, a private investigator found "the claims in the letter were illegitimate." *Id.*

Plaintiff then proceeds to describe how he was "retaliated against by [his] former provost, [Defendant Dr.] Julie Leidig, for voicing [his] concerns of discriminatory practice to the former [NVCC] president Scott Ralls." *Id.* Among those concerns, Plaintiff highlighted alleged

11

discrimination by Defendant Canfield and the provost's cancellation of a "highly successful introductory course on Islam for two years, while still retaining a course on Christianity during that time frame." *Id.* at 1-2. Plaintiff continues in more detail, describing the NOVACares Report filed by Defendant Leidig against Plaintiff that culminated in Defendant Canfield's letter of reprimand issued to Plaintiff in December of 2019. An "internal private investigator" also found Defendant Leidig's NOVACares Report to be "a retaliatory act" against Plaintiff. *Id.* Plaintiff concludes by describing his pain and suffering and asserting his belief that he has been "discriminated and retaliated against due to [his] national origin (Egyptian), and religion (Muslim) in violation of Title VII of the Civil rights Act of 1964, as amended." *Id.* at 2.

From the boxes Plaintiff checked to the underlying Particulars, the Charge evinces clear allegations of discrimination on the basis of national origin and religion in the form of harassment and retaliation. More convincing to this Court is Plaintiff's Particulars, which reallege plenty of the same facts in the Amended Complaint on which Plaintiff's entire claim relies. *See, e.g.*, Dkt. 8 ¶¶ 40, 42, 45, 47, 57, 60, 62. Contrary to Defendants' belief, the allegations raised in the Amended Complaint are not dislocated from those in the Charge. Nor do they allege a different flavor of discrimination. *Jones*, 551 F.3d at 300 (barring claims in formal litigation that derive from entirely different forms of discrimination than those alleged in the charge). The formal litigation alleges discrimination in line with the discrimination alleged in the Charge, which sufficiently put Defendants on notice that Plaintiff had alleged hostile work environment and retaliation claims under Title VII. *See, e.g.*, *Equal Emp. Opportunity Comm'n v. 1618 Concepts, Inc.*, 432 F. Supp. 3d 595, 602 (M.D.N.C. 2020) (holding EEOC charge sufficient to support harassment claim because it "identified [the plaintiff's] harasser, the harassment, alleged it

occurred on multiple occasions, and described how, despite [the plaintiff's] complaints to management, no action was taken against the male co-worker").

Failing to select "Race" discrimination but selecting the boxes for discrimination on the basis of "National Origin" and "Religion" also does not, on its own, prove fatal to Plaintiff's formal litigation.  Indeed, courts have held that introducing racial discrimination to formal litigation already based on national origin discrimination may serve to "properly amplif[y]" the complaint. *See, e.g.*, *Adames v. Mitsubishi Bank Ltd.*, 751 F. Supp. 1565, 1572 (E.D.N.Y. 1990) ("There appears to be little dispute that, by adding race and color as bases for discrimination, [the plaintiff's] amended complaint properly 'amplified' her original complaint alleging only national origin discrimination."); *Oyoyo v. Baylor Health Network, Inc.*, No. 3:99-cv-0569L, 2000 WL 655427, at *3 (N.D. Tex. May 17, 2020) (determining that plaintiff's failure to check "Race" on her charge did not preclude her from raising race discrimination in her complaint because she was "likely to be racially grouped or identified" with a minority race based on her heritage).  The same argument resonates here where Plaintiff's Egyptian heritage is likely to cast him within the same racial group as those who traditionally experience racial discrimination.  Thus, Plaintiff's Charge should be interpreted as if he checked the "Race" discrimination box and alleged race discrimination and retaliation for reporting such discrimination.  Plaintiff has met his burden of administrative exhaustion on this score too.

Plaintiff's allegations in the Charge are also timely.  As to the hostile work environment claim, this Court first follows the "continuing violation doctrine" established by the United States Supreme Court in *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 105 (2002) where the Court determined that "consideration of the entire scope of a hostile work environment claim, including behavior alleged outside the statutory time period, is permissible for the purpose of

assessing liability, so long as any act contributing to that hostile environment takes place within the statutory time period."  Applying *Morgan* to the hostile work environment claim context, this circuit has made clear that:

> If acts outside the statutory window contribute to a hostile work environment, the Court may consider all of those acts, so long as any act contributing to that same hostile work environment occurs within the statutory window.  Such a timely-act "anchors" the previous acts that occurred more than 300 days before the charge, making them also timely under the continuing violation doctrine.

*Edwards*, 760 F. Supp. 2d at 620.  Here, the Court finds that the "Emotional Intelligence Training" Plaintiff was required to attend, beginning on December 31, 2019, is an anchoring event that occurred as the reasonable result of the alleged prior pattern of discrimination against Plaintiff. Dkt. 8 ¶ 59.[3]  Defendants' contentions seeking to limit the scope of the matter to December 31, 2019, or in the alternative to December 19, 2019, sees the trees but not the forest.  At no point in the Charge does Plaintiff allege that the harms he suffered were limited only to the discrete event occurring on December 31, 2019.  Rather, Plaintiff charges that the letter of reprimand, the forced breaking of his fast, and the six trainings he was ordered to attend in December of 2019 were not without prior history dating back to 2017, painting a broader picture of discrimination.  Thus, this Court finds that these allegations should be taken together as a pattern of discrimination, rather than as discrete acts of discrimination, because this Court "cannot say that they are not part of the same actionable hostile environment claim."  *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 121 (2002); *Edwards v. Murphy-Brown, L.L.C.*, 760 F. Supp. 2d 607, 619 (E.D. Va. 2011) ("Unlike a hostile work environment claim, which is continuous in nature, a discrete act is solitary and occurs 'on the day that it happened.'") (quoting *Morgan*, 536 U.S. at 110).

---

[3]  While Plaintiff never indicated the exact December 2019 date on which he completed the Emotional Intelligence Training, upon reasonable investigation of the Amended Complaint, such date was determined to be December 31, 2019.

This Court also considers Plaintiff's retaliation claim timely but constricts the universe of allegations on which Plaintiff may advance his retaliation claim.  While Count II survives on a continuing violation theory, the Supreme Court has drawn the line at hostile work environment claims.  *Morgan* reversed a lower court's attempt to apply the continuing violation doctrine to retaliation claims under Title VII.  536 U.S. at 117; *Perkins v. Int'l Paper Co.*, 936 F.3d 196, 209 n.5 (4th Cir. 2019).  Looking to the Charge, Plaintiff assigns no specific date to the alleged retaliation he claims.  And upon reasonable investigation of the Amended Complaint, the only cause of action falling within the 300-day filing period, which could be considered a retaliatory action by Defendants, is the December 31, 2019 "Emotional Intelligence Training" course in which Plaintiff was required to participate.  Because this Court cannot apply the same anchoring technique as it did for Plaintiff's hostile work environment claim, this Court limits its review of Plaintiff's retaliation claim to the required training he completed on December 31, 2019, and any reasonably related alleged events occurring thereafter.

Lastly, as to the hostile work environment claim, this Court considers the panoply of  issues in the allegations in the Amended Complaint and whether those allegations relate back to those in the Charge.  In doing so, this Court exercises its prerogative to conduct a reasonable investigation of the matters in the Charge as blessed in *Chacko*.  Consequently, this Court considers discrimination claims "reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint."  429 F.3d at 506.  Plaintiff's allegations tie directly to the claimed harm.  They reasonably relate to his complaint and evoke a general pattern of alleged discrimination.  Notably, the Fourth Circuit has made clear that a charge "is not to be treated as a common-law pleading that strictly cabins the investigation that results therefrom, or the reasonable cause determination that may be rested on that investigation."  *Equal Emp.*

*Opportunity Comm'n v. Gen. Elec. Co.*, 532 F.2d 359, 364 (4th Cir. 1976).  This Court must simply determine whether the allegations in the charge provide a "jurisdictional springboard to investigate whether the employer is engaged in any discriminatory practices."  *Id.* (quoting *Equal Emp. Opportunity Comm'n v. Huttig Sash & Door Co.*, 511 F.2d 453, 455 (5th Cir. 1975)).  Unlike in *Mezu v. Morgan State Univ.*, 367 F. App'x 385, 388-89 (4th Cir. 2010), where the Fourth Circuit affirmed a motion to dismiss a Title VII complaint on the basis that the cause of action exceed the 300-day exhaustion period, Plaintiff here demonstrates a cause of action occurring within that window—December 31, 2019—that is the direct result of a letter of reprimand filed against Plaintiff earlier that month, which also connects back directly to the prior incidents alleged in the Amended Complaint.  This Court will consider each of the remaining Title VII counts alleged in the Amended Complaint in turn.

> ii.  Title VII Hostile Work Environment Claim Against VCCS (Count II)

Plaintiff's second claim avers that the disparate treatment he experienced on the basis of his race, national origin, and religion amounts to a hostile work environment in violation of Title VII.  Defendants maintain that this claim should also be dismissed because Plaintiff did not allege harassment in his Charge to the EEOC.  Even if Plaintiff did exhaust his administrative remedies, Defendants argue that he has failed to state a claim because he has not demonstrated harassment as required by the Fourth Circuit, namely that such harassment has targeted (1) a protected characteristic; (2) that was sufficiently severe or pervasive; and (3) that can be imputed to Plaintiff's employer.  Lastly, Defendants argue that Plaintiff has abandoned all claims premised upon discrete acts in his Opposition and therefore, Plaintiff's hostile work environment claim is fatally undermined, meriting dismissal.  Specifically, Defendants contend that Plaintiff may only

rely on alleged events occurring within 300 days of Plaintiff's Charge, which ultimately topples their hostile work environment claim.

Plaintiff, however, maintains a general hostile work environment claim premised not on discrete acts of discrimination but rather a pattern of general discriminatory treatment.  Relying on case law, Plaintiff asserts that the allegations in his Amended Complaint need not establish a *prima facie* case as Defendants argue but rather simply provide "a short and plaint statement of the claim showing that the pleader is entitled to relief."  Dkt. 36 at 12 (quoting Fed. R. Civ. P. 8(a)(2)).  And even if that pleading standard is insufficient, Plaintiff submits that the Amended Complaint makes the necessary *prima facie* case for a hostile work environment claim.

To state a hostile work environment claim, Plaintiff must allege sufficient facts to show that the alleged conduct he experienced was: (1) unwelcome; (2) based on a protected characteristic; (3) sufficiently severe or pervasive to alter the conditions of his employment and to create an abusive work environment; and (4) imputable to his employer.  *See Pryor v. United Air Lines, Inc.*, 791 F.3d 488, 495-96 (4th Cir. 2015).  Said differently, to make out a *prima facie* hostile work environment claim, a plaintiff must plausibly plead that "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."  *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (citation and internal quotation marks omitted).

Neither party contends that Plaintiff has alleged unwelcome conduct by Defendants.  And this Court agrees that this element of a hostile work environment has been well-pled.

Despite Defendants arguing that Plaintiff failed to allege that any of the perceived hostile conduct directed at him was "because of" a protected characteristic, this Court also finds that Plaintiff has pleaded a sufficient basis for his claim to meet the second prong.  The Fourth Circuit

does not require that the alleged discriminatory behavior "be accompanied by a contemporaneous statement of animus to be actionable under Title VII—rather, the connection between animus and conduct may be inferred from the totality of the circumstances." *Strothers v. City of Laurel*, 895 F.3d 317, 330-31 (4th Cir. 2018).

Examining the totality of the circumstances alleged, this Court observes that Plaintiff made clear to Defendants his belief that he was being subjected to discrimination.  In the face of Plaintiff's alleged repeatedly voiced concerns of discrimination on the basis of his national origin, race, and religion, there is a plausible basis to believe that Defendant VCCS was aware of and continued to ignore the actions taken by its employees that discriminated against Plaintiff, including reprimanding Plaintiff for stepping out of his classroom to break his fast and filing a report claiming that Plaintiff conveyed his belief that "God was watching . . . and there would be punishment after [Defendant Leidig] die[d]." *See* Dkt. 8 ¶¶ 25, 46, 47.  During one meeting with Defendant Canfield, Plaintiff referenced a previous problem Defendant Canfield had with a prior "African-American full-time faculty member" who she had allegedly "run out," further supporting his view that Plaintiff had targeted faculty on the basis of race. *Id.* ¶ 25.  Moreover, Plaintiff joined eleven other African-American, Middle-Eastern, and Muslim NVCC employees to address "racial and religious discrimination at the college" with the then-sitting president. *Id.* ¶ 38.  That president, in response, acknowledged that NVCC "can be a 'toxic' place to work at." *Id.* ¶ 39.  Together, these allegations reveal a plausible basis to believe that the alleged conduct amounted to targeting Plaintiff's race and religion.

The facts alleged in the complaint are compelling just as are those facts alleged in defense. To be sure, if either set of facts are proven to be true by a fact-finder, the consequences might well be significant.  At this stage, taking all facts in the light most favorable to Plaintiff, the allegations

in the Amended Complaint also clear Title VII's "high bar" for alleging sufficiently severe or pervasive workplace harassment. *See E.E.O.C. v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 315 (4th Cir. 2008). Importantly, this element of a hostile work environment claim includes "both subjective and objective components." *E.E.O.C. v. Cent. Wholesalers, Inc.*, 573 F.3d 167, 175 (4th Cir. 2009). Plaintiff must therefore show that he subjectively perceived his work environment as hostile and abusive, and that a reasonable person considering all the circumstances would objectively view the harassment as severe. The Court has considered the totality of the circumstances in determining that the workplace conduct Plaintiff experienced was sufficiently severe or pervasive, including its (1) frequency; (2) severity; (3) whether the conduct was physically threatening or humiliating, or merely an offensive utterance; and (4) whether the conduct unreasonably interfered with the plaintiff's work performance. *See Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 277 (4th Cir. 2015) (citing *Harris*, 510 U.S. at 23).

Defendants disciplined Plaintiff in a manner that could be perceived to be, at minimum, frequent, severe, humiliating, and disruptive of his work performance. While many of Plaintiff's discrete allegations do not rise to the level of severe or pervasive, others do—particularly when examined as a whole. As alleged in both Plaintiff's Charge and Amended Complaint, Defendants made three separate calls to the police as a result of him allegedly "yelling," conduct which Plaintiff altogether denies. Before his peers and pupils, Plaintiff was escorted off the campus and the subject of multiple investigations stemming from NOVACares Reports later allegedly deemed without veracity. These alleged acts rise above mere "offensive utterances." *Boyer-Liberto*, 786 F.3d at 277.

Lastly, this Court finds that the actions of NVCC employees create a plausible basis for imputing liability to VCCS. An employer is vicariously liable for harassment by a supervisor

"with immediate (or successively higher) authority over the employee." *Howard v. Winter*, 446 F.3d 559, 565 (4th Cir. 2006). The thrust of Plaintiff's alleged discriminatory treatment emanates from his interactions with Defendant Canfield, Dean of Plaintiff's department and his direct supervisor tasked with conducting his annual review, as well as Defendant Leidig, then Provost. *See* Dkt. 8 ¶¶ 10-11, 46 (alleging statements from Defendant Leidig's NOVACares Report which alleged that Plaintiff disregarded the direction of his "supervisors (dean and now provost)"); *see also id.* ¶ 77 ("Plaintiff's supervisors engaged in demeaning and hostile conduct towards Plaintiff during the course of his employment with Defendant.").

Both Defendants Canfield and Leidig are alleged to have influence over Plaintiff's employment evaluation and Plaintiff's direct reporting. Indeed, Defendant Canfield's letter of reprimand and the six trainings she ordered demonstrate her authority over Plaintiff's professional obligations. As such, this Court finds a sufficient plausible nexus for imputing liability to Defendant VCCS for the alleged discriminatory conduct of Defendants Canfield and Leidig. To be sure, Plaintiff also put Defendant VCCS on notice of the alleged harassment in August and December of 2018—when Plaintiff met with then president Scott Ralls—and in June of 2019— when he emailed Defendant Canfield and "other high-ranking employees" at NVCC "including then president, Melvyn Schiavelli, VCCS Chancellor Glenn Dubois, and Jill Biden"—and allegedly received a response from Mr. Schiavelli. *Id.* ¶¶ 38-39, 51.

Thus, Count II of the Amended Complaint survives the Motion because Plaintiff has alleged a more than speculative basis for a hostile work environment claim pursuant to Title VII.

### iii. Title VII Retaliation Claim Against VCCS (Count III)

Plaintiff's third cause of action alleges Defendant VCCS retaliated against her in violation of Title VII for his complaints of racial and religious discrimination. Defendants seek dismissal

on the basis that Plaintiff has not demonstrated retaliation in response to a protected category; rather, Defendants argue that Plaintiff improperly seeks relief by relying on Defendant Jacyna's protected activity.  Dkt. 38.

To state a *prima facie* retaliation claim under Title VII, Plaintiff must sufficiently allege "(1) that he engaged in protected activity, (2) that the employer took a materially adverse action against him and (3) there is a causal connection between the protected activity and the adverse action." *Evans v. Int'l Paper Co.*, 936 F.3d 183, 195 (4th Cir. 2019) (internal citations omitted).

Taking all facts alleged in the Amended Complaint as true, and limiting the viable allegations to those that fall within the 300-day Charge period, Plaintiff alleges that he engaged in protected conduct when he reported what he perceived as race-based and religion-based disparate treatment at a December 31, 2019 "Emotional Intelligence Training" diversity and inclusion meeting.  *See* Dkt. 8 ¶¶ 55, 59 (alleging that Plaintiff attended his last required training on December 31, 2019 and further alleging that, at each meeting, Plaintiff "continued to plead his case of discrimination").  Complaining to one's supervisors of discrimination on the job is a protected activity.  *See Washington v. Digital Equip. Corp.*, 968 F.2d 1213 (4th Cir. 1992). Defendant Jacyna having engaged in a protected activity herself in filing the EEOC charge, which then led to Defendant Canfield ordering Plaintiff's training, does not sanitize Defendant Canfield's order of any possible discriminatory intent.

Next, Plaintiff alleges that he suffered an adverse action when, several months after Plaintiff engaged in a protected activity, (1) Defendant Jacyna filed an EEOC gender discrimination charge against him in December of 2017, (2) when he was instructed by Defendant Canfield to take an emotional intelligence training in February of 2018, and (3) when Defendant Leidig filed a NOVACares Report against him on January 10, 2019.  *See* Dkt. Nos. 8 ¶¶ 24, 28,

21

42; 36 at 21.  However, as this Court is restricted to considering acts of retaliation occurring within the 300-day exhaustion period explicitly mentioned in the Charge or reasonably related thereto, no retaliation occurred *following* the alleged protected activity occurring within the required window. In other words, Plaintiff alleges that he engaged in a protected activity within the 300-day period in at least two occasions, *see* Dkt. 8 ¶¶ 55, 59-60, but he does not aver that any act of retaliation occurred thereafter.  Rather, the president of NVCC granted Plaintiff's demands to be reassigned to another dean by moving Plaintiff under a dean who is allegedly Muslim and of Middle Eastern descent.  *Id.* ¶ 63.  Without an alleged adverse action occurring within the viable review period, Plaintiff's retaliation Title VII claim cannot survive.

Even if this Court were to consider the alleged acts of retaliation, such acts fail to rise to the level of a materially adverse action as required by the United States Supreme Court.  *See Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 68 (2006) ("[A] plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.").  The Fourth Circuit requires "some direct or indirect impact on an individual's employment as opposed to harms immaterially related to it."  *Adams v. Anne Arundel Cty. Pub. Schs.*, 789 F.3d 422, 431 (4th Cir. 2015).  Reputational injury that "invoke[s] comparable harm" to an "ultimate employment action" so as to cause "irreparable damage to the plaintiff's reputation or ability to perform his work[] can potentially rise to actionable retaliation."  *Chappell v. Sch. Bd. of City of Va. Beach*, 12 F. Supp. 2d 509, 516 (E.D. Va. 1998); *see also Parkinson v. Anne Arundel Med. Ctr., Inc.*, 214 F. Supp. 2d 511, 518 (D. Md. 2002), *aff'd*, 79 F. App'x 602 (4th Cir. 2003) ("Plaintiff's one-day, unpaid suspension . . . could constitute an adverse employment action.").  But "misunderstandings, personality conflicts, job

performance evaluations, and purely administrative matters" do not. *Chappell*, 12 F. Supp. 2d at 516. Indeed, Plaintiff alleged that none of the accusations waged against him proved meritorious, that he continues to retain his full-time professorship after Defendant VCCS approved his employment contract for an additional five years, and that he now is permitted to report to another dean at his insistence. This Court reaffirms that Plaintiff has not sufficiently pleaded a plausible Title VII claim for retaliation and need not visit the issue of causation.

   3. *Section 1983 Claim Against Defendants Glenn DuBois, Barbara Canfield, Julie Leidig, Deborah Wyne, and Laura Jacyna, in their Official Capacities (Count IV)*

   Plaintiff has sued five individuals in their official capacity as employees of the state ("Individual Defendants"). In briefing, Plaintiff concedes that his § 1983 claim is limited only to harassment and therefore the elements of a Section 1983 claim under the Fourteenth Amendment mirror those required to plead a Title VII hostile work environment claim. Dkt. 36 at 22-26. Plaintiff also concedes that the Eleventh Amendment prohibits a federal court from hearing a § 1983 action brought against a state employee in his or her official capacity. These sweeping concessions, Defendants argue, merit the dismissal of this claim.

   All of the Individual Defendants named in Plaintiff's § 1983 claim, without some showing otherwise, are afforded immunity from the civil claims at bar. The Eleventh Amendment grants sovereign immunity to state agencies from suits brought by private citizens in federal court against individual state officials acting in their official capacities, save for when the private citizen seeks injunctive relief. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984); *see also Amaram v. Va. State Univ.*, 476 F. Supp. 2d 535, 541 (E.D. Va. 2007), *aff'd*, 261 F. App'x 552 (4th Cir. 2008) ("It is similarly well-established that the Eleventh Amendment prohibits a federal court from entertaining a § 1983

suit brought against a state officer in his official capacity, except to the extent that the plaintiff is seeking prospective injunctive relief." (internal citation omitted)).

Since Plaintiff's entire Complaint stems from his professional interaction with fellow employees of the Commonwealth as an employee of NVCC, which is a subsidiary of Defendant VCCS—a state agency, *see* Va. Code Ann. § 23.1-2904, the Individual Defendants are entitled to qualified immunity from Plaintiff's civil claims.  Plaintiff has not claimed in his Amended Complaint that the Individual Defendants' actions were made outside the scope of their official employment.  Nor has Plaintiff sought to obtain prospective injunctive relief; he seeks only damages.  Therefore, the court also holds that the Individual Defendants are immune from the § 1983 civil action brought by Plaintiff.

Accordingly, Plaintiff's Section 1983 count fails to state a claim upon which relief may be granted.  This Court will dismiss Count IV of the Amended Complaint with prejudice as to the Individual Defendants named in their official capacities.

## IV.  CONCLUSION

For the foregoing reasons, it is hereby ORDERED that Defendants' Motion (Dkt. 31) is GRANTED IN PART and DENIED IN PART.  The Motion is GRANTED as to Defendants' Motion to Dismiss for Lack of Jurisdiction as to Defendant Northern Virginia Community College and as to Counts One, Three, and Four.  Defendants' Motion is DENIED with respect to Count Two, as Plaintiff's hostile work environment claim states a claim upon which relief may be granted.  Defendant Northern Virginia Community College is hereby DISMISSED from the case WITH PREJUDICE; and it is

FURTHER ORDERED that Counts One and Three of the Amended Complaint are DISMISSED WITH PREJUDICE; and it is

FURTHER ORDERED that Count Four of the Amended Complaint is DISMISSED WITH

PREJUDICE as to the Individual Defendants named in their official capacity.

It is SO ORDERED.

Alexandria, Virginia
March 16, 2022

_____ /s/

Rossie D. Alston, Jr.
United States District Judge

25